UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

|  |  |  |
|---|---|---|
| UNITED KING FILM DISTRIBUTION LTD, D.B.S. SATELLITE SERVICES (1998) LTD, HOT COMMUNICATION SYSTEMS LTD, CHARLTON LTD, RESHET MEDIA LTD, AND KESHET BROADCASTING LTD, | : : : : | Case No. 1:21-cv-11026-AJN |
| Plaintiffs, | : |  |
| -- against -- | : |  |
| DOES 1-10, d/b/a **Sdarot.com**, | : |  |
| Defendants. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

# MEMORANDUM OF LAW IN SUPPORT OF MOTION
# FOR EXPEDITED DISCOVERY AND ALTERNATIVE SERVICE

KAUFMAN & KAHN, LLP
Mark S. Kaufman
  (Email:  Kaufman@KaufmanKahn.com)
10 Grand Central
155 East 44th Street, 19th Floor
New York, New York 10017
Tel.: (212) 293-5556
*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 5

ARGUMENT ....................................................................................................................... 8

   I.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS. .................. 8

   II.    PLAINTIFFS ARE ENTITLED TO CONDUCT EXPEDITED DISCOVERY ........... 12

   III.    THE CIRCUMSTANCES MERIT AN ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS ON DEFENDANTS BY ELECTRONIC MEANS ....................... 14

     A.   CPLR § 308 Authorizes Alternate Service on Individuals in the United States. ........... 15

     B.   Rule 4(f)(3) of the Federal Rule of Civil Procedure Authorizes Alternate Service on Individuals in a Foreign Country. .......................................................................................... 17

       1. Service of Process by Email on Defendants Is Not Prohibited by International Agreement ................................................................................................................................ 17

       2. Service of Process by Email Is Reasonably Calculated to Provide Notice to Defendants ................................................................................................................................ 19

CONCLUSION .................................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**

*ABC v. Aereo, Inc.*, No. 12-cv-1540-AJN, 2014 U.S. Dist. LEXIS 150555, at *30 (S.D.N.Y. Oct. 23, 2014) .............................................................................................................. 6

*ADI Glob. Distribution v. Green*, No. 20-CV-3869 (DRH)(JMW), 2021 U.S. Dist. LEXIS 231977, at *10 n.7 (E.D.N.Y. Dec. 3, 2021) ................................................................ 17

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 U.S. Dist. LEXIS 169603, at *12 (S.D.N.Y. Sep. 30, 2018) ......................................... 19

*Alfred E. Mann Living Tr. v. ETIRC Aviation S.A.R.L.*, 78 A.D.3d 137, 142, 910 N.Y.S.2d 418, 423 (1st Dept. 2010) .................................................................................................. 15

*Arista Records v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010) ............................................... 13

*Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y. Oct. 14, 1997) ......................................... 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985) ...................... 11

*Cengage Learning v. Xuhong Wang*, 2017 U.S. Dist. LEXIS 233195, at *1-2 (S.D.N.Y. Sep. 14, 2017) ...................................................................................................... 12, 13, 16

*Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018) ...................... 20

*FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013) ................................................................ 16, 18

*Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) .............................................. 19

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228 (1958) .......................................... 11

*In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 U.S. Dist. LEXIS 142802, at *6 (S.D.N.Y. Aug. 10, 2020) ............................................................................. 18

*In re Platinum and Palladium Antitrust Litig.*, 1:14-cv-9391-GHW, 2017 U.S. Dist. LEXIS 46624, 2017 WL 1169626, at *41 (S.D.N.Y. March 28, 2017) ........................................... 12

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 29806, at *18-19 (S.D.N.Y. Mar. 2, 2017), report and recommendation adopted 2017 U.S. Dist. LEXIS 50723, 2017 WL 2988249 (S.D.N.Y. March 27, 2017).... 8, 11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F. 3d 161, 168 (2d Cir. 2013) .............. 9

*Marvici v. Roche Facilities Maint. LLC*, 2021 U.S. Dist. LEXIS 193094, at *10-11 (S.D.N.Y. Oct. 6, 2021) .................................................................................................. 17

*McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 410 (S.D.N.Y. 2017) ............................................................................................................ 9

*Microsoft Corp. v. Doe*, No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122, at *8 (E.D.N.Y. Nov. 13, 2012) ...................................................................................... 20

*Park W. Galleries, Inc. v. Franks*, 2012 U.S. Dist. LEXIS 86629, 2012 WL 2367040, at *7 (S.D.N.Y. June 20, 2012) ..................................................................................... 11

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *3 (S.D.N.Y. Mar. 13, 2007) ...................................................... 16, 17, 19

*Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) .................................... 12

*Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist. LEXIS 26534, at *5 (S.D.N.Y. Mar. 22, 2010) ........................................................ 18, 19

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 17 Civ. 5553 (LGS) (GWG), 2020 U.S. Dist. LEXIS 139730, at *21 (S.D.N.Y. Aug. 5, 2020) ...................................... 20

*RSM Prod. Corp. v. Friedman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) ................................................................ 17

*Rubin v. City of N.Y.*, 2007 U.S. Dist. LEXIS 23003, at *11 (S.D.N.Y. Mar. 29, 2007) .............. 9

*Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-04 (4th Dep't 2013) ........................................ 15

*Sony Music Entm't Inc, v. Does 1-40,* 326 F. Supp. 2d 556, 565-66 (S.D.N.Y. 2004) ................ 12

*Spin Master v. Alvy*, No. 19-CV-3452 (LGS) (BCM), 2021 U.S. Dist. LEXIS 222374, at *11-12
    (S.D.N.Y. Nov. 17, 2021) ............................................................................................... 9, 11

*Starmedia Network, Inc. v. Star Media, Inc*., No. 00 CIV. 4647, 2001 U.S. Dist. LEXIS 4870,
    *7-8 (S.D.N.Y. Apr. 23, 2001) .......................................................................................... 10

*Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2018 U.S. Dist. LEXIS 233452, at *4
    (E.D.N.Y. Apr. 23, 2018 ..................................................................................................... 14

*Sulzer Mixpac AG v. Medenstar Indus. Co*., 312 F.R.D. 329, 331 (S.D.N.Y. Nov. 27, 2015)18, 20

*Twentieth Century Fox Film Corp. v. Mow Trading* Corp., 749 F. Supp. 473, 475 (S.D.N.Y.
    1990) ..................................................................................................................................... 13

*Warner Bros. Entm't v. Ideal World Direct,* 516 F. Supp. 2d 261, 266 (S.D.N.Y. 2007) .............. 8

**Statutes**

17 U.S.C. § 502 ....................................................................................................................................... 5

CPLR § 302 .............................................................................................................................................. 5

CPLR § 302(a)(3) .............................................................................................................................. 10, 11

CPLR § 308(5) ........................................................................................................................................ 15

Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)(A) ................................ 5

Fed. R. Civ. Pro. 4(k) ....................................................................................................................... 5, 11

Federal Rule of Civil Procedure 4(e)(1) ........................................................................................... 14

Federal Rule of Civil Procedure 4(f) ............................................................................................ 14, 19

Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361 ............................................................... 18

4

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR EXPEDITED DISCOVERY AND ALTERNATIVE SERVICE**

Pursuant to U.S. Copyright Act, 17 U.S.C. § 502, the Digital Millennium Copyright Act

("DMCA"), 17 U.S.C. § 1201(a)(1)(A), N.Y. CPLR § 302(a), and Fed. R. Civ. Pro. 4(k), Plaintiffs

United King Film Distribution Ltd, D.B.S. Satellite Services (1998) Ltd, HOT Communication

Systems Ltd, Charlton Ltd, Reshet Media Ltd, and Keshet Broadcasting Ltd (together

"**Plaintiffs**)", by their attorneys Kaufman & Kahn, LLP, hereby move the Court *ex parte* for an

Order Authorizing Expedited Discovery and Alternate Service and state as follows:

## INTRODUCTION[1]

Plaintiffs are among the largest movie, television, sports and news broadcasting channels

and producers in the State of Israel. (Matalon ¶ 2). Plaintiffs commenced this action because

Defendants, as the owners and operators of the website (the "Website") located at the domain

www.Sdarot.tv are liable for direct, vicarious and contributory copyright infringement because

the Website is re-broadcasting and streaming, in the United States, Hebrew-language television

and online channels and content owned by Plaintiffs exclusively for broadcasting and streaming

in Israel (except as licensed in the United States).  Defendants also are circumventing

technological measures that effectively control access to Plaintiffs' works.  Details are set forth

in the Complaint. (Kaufman, Ex. 1).

---

[1] The facts supporting Plaintiffs' requests herein are set forth in the accompanying Declarations
of Mark S. Kaufman dated January 7, 2021 ("**Kaufman**"), Albertino Matalon, dated January 2,
2021 ("**Matalon**"), Eran Presenti dated December 31, 2021 ("**Presenti**"), Noy Peretz dated
December 30, 2021 ("**Peretz**"), Robert Brake dated December 21, 2021 ("**Brake**") and David
Schwegman, Ph.D., dated January 2, 2022 ("**Schwegman**").  For the sake of brevity, those facts
are not repeated here.

Plaintiffs seek in their Complaint both damages from the infringing conduct and preliminarily and permanently to enjoin such unauthorized re-transmission and streaming of Plaintiffs' content.[2] (Kaufman Ex. 1, ¶¶ 61, 68). *See ABC v. Aereo, Inc*., No. 12-cv-1540-AJN, 2014 U.S. Dist. LEXIS 150555, at *30 (S.D.N.Y. Oct. 23, 2014) ('findings of irreparable harm to Plaintiffs based on loss of subscribers due to cord cutting, loss of control over copyrighted content, and damage to relationships with content providers, advertisers, or licensees.")

In a clear and unambiguous violation of Plaintiffs' rights under Copyright Act, defendants Does 1-10 (the "**Defendants**"), through the Website, transmit, stream, distribute, publicly perform, link to, host, promote, advertise, and display in the United States, Plaintiffs' movies, television series, live coverage of sports events and news. The content that Defendants sell by subscription to their customers (the "**Website Users**") is not authorized by Plaintiffs, but rather infringes on Plaintiffs' copyrights. (Matalon ¶ 4).

Even after an Israeli court issued injunctions against Defendants and directed the ISPs in Israel to stop allowing Defendants to infringe Plaintiffs' content (Presenti, ¶ 3, Ex. A and B), Defendants demonstrated their infringement was willful by continuing to provide on the Website in the United States the movies, television series, sports and news stations owned by Plaintiffs.

Defendants advertise, promote, and sell the audiovisual content as though they are Plaintiffs' authentic distributors and authorized by Plaintiffs. Defendants so faithfully stream

---

[2] In their Complaint, Plaintiffs seek *inter alia* to enjoin Defendants from infringing on Plaintiffs' copyrights, both those registered in the United States and those subject to copyright protection in Israel and, through the Berne Convention, the United States Copyright Act. (Kaufman Ex. 1, ¶¶ 22, 48-49).  *See* 17 U.S.C. §§ 411(a) (copyright registration is required for "U.S. works"), 101 (definitions of "U.S. Works", "Berne Convention"), 104(b) (works subject to copyright include those whose author is a national or domiciliary of a treaty party). *See, e.g., Chadha v. Chadha*, No. CV 16-3739 (ENV) (AKT), 2020 U.S. Dist. LEXIS 35627, at *37 (E.D.N.Y. Mar. 2, 2020) ("Registration is only a prerequisite when the foreign copyright holder seeks statutory damages and attorney's fees.").

Plaintiffs' content that Defendants identify their reproduced content using Plaintiffs' trademarks and include production credits that identify the contents' origins. (Kaufman ¶ 6 and Ex. 2; Peretz ¶¶ 3-4, and Ex. A-F). Defendants sell the Hebrew-language content by subscription to Israeli expatriates in the United States. In so doing, Defendants are undermining the ability of Plaintiffs to sell legitimate subscription services to Plaintiffs' content in the U.S., which Plaintiffs launched in August 2021.  (Matalon ¶¶ 6-10).  Defendants are undoubtedly aware that their activities are illegal, yet they still persist in them, all along profiting from their blatantly illegal conduct.

Based on the efforts Defendants have made to conceal their true identities, including the failure to provide any actual locations for the Website's owners or operators (see Kaufman, ¶¶ 6, 8 and Ex. 3), and given the nature of Defendants' illegal activity, Plaintiffs require expedited discovery targeted at obtaining Defendants' identities and information as to their true locations. Service providers to the Website such as domain registrars, streaming platforms and credit card companies have declined to identify Defendants or provide their contact information (*see* Kaufman, ¶¶ 9-13 and Presenti, ¶¶ 6-10).  However, Plaintiffs have reason to believe that expedited discovery backed by a Court order will lead to the identification of Defendants' true names and locations.

Although their identities and locations are presently unknown, Defendants conduct business through their Website. Thus, Plaintiffs seek to serve the summons, complaint and this motion by alternative service through the "Contact Us" portal and the email address set forth on the Website which Defendants use to provide customer support for the infringing service.

Accordingly, by this motion, Plaintiffs request: (1) leave to serve targeted expedited discovery, including but not limited to subpoenas to vendors of the Website; and (2) an order

authorizing service of the Summons and Complaint, this motion and future filings upon Defendants via the Website's "Contact Us" subscriber portal and email address, with a link to Dropbox® from which Defendants could download the documents.

## ARGUMENT

### I.      THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS.

Prior to discovery, a plaintiff need only make a *prima facie* showing of personal jurisdiction to warrant compelled jurisdictional discovery. *See, e.g., Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 29806, at *18-19 (S.D.N.Y. Mar. 2, 2017), report and recommendation adopted 2017 U.S. Dist. LEXIS 50723, 2017 WL 2988249 (S.D.N.Y. March 27, 2017).

New York's long-arm statute is satisfied here on multiple grounds, including NY CPLR §302(a)(1), which provides for a court exercising "personal jurisdiction over any non-domiciliary" who "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state…" CPLR § 302(a)(1).

Here, Defendants operate the Website through which they sell or have sold to customers in the United States, including in New York, streaming that infringes on Plaintiffs' copyrighted content. (Matalon Decl. ¶¶ 8-10 and Ex. A thereto). These activities alone support personal jurisdiction over Defendants in New York. *See e.g., Warner Bros. Entm't v. Ideal World Direct,* 516 F. Supp. 2d 261, 266 (S.D.N.Y. 2007) (transmission of files that infringe copyright in movies with New York residents sufficient for court's personal jurisdiction pursuant to § 302(a)(1)). "Active websites used by New York consumers to purchase an out-of-state defendant's products . . . generally confer personal jurisdiction." *Joint Stock Co. Channel One Russ. Worldwide*, 2017

U.S. Dist. LEXIS 29806, at *28 (S.D.N.Y. Mar. 2, 2017) (defendant could be sued in New York based on its illicit broadcasts of Russian television content into New York). *See also McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 410 (S.D.N.Y. 2017) ("This Court need look no further than § 302(a)(1)" to establish personal jurisdiction over defendants accused of copyright infringement related to online marketplace sale of counterfeit books with sales and shipments to consumers in New York.)

Defendants presumably provide their Israeli and Hebrew-translated content to Website users in New York, because New York is the state with the greatest number of Hebrew speakers, and New York City has one of the largest communities of Israeli expatriates. (Schwegman, ¶¶ 3-5 and Ex. A). The Website clearly is "active" as it invites subscriptions to purchase and stream the content Defendants stolen from Plaintiffs. Thus, Defendants are subject to personal jurisdiction pursuant to NY CPLR §302(a)(1), because they transact business within New York and the claims asserted in this action arose from those business transactions. Moreover, an account on the Website was opened and the screenshots annexed hereto were accessed from computers located in New York and Westchester Counties. (*See* Kaufman, Ex. 1, ¶ 12-16; Brake ¶¶2-3; Peretz ¶¶ 3-4, and Ex. A-F). *See Spin Master v. Alvy*, No. 19-CV-3452 (LGS) (BCM), 2021 U.S. Dist. LEXIS 222374, at *11-12 (S.D.N.Y. Nov. 17, 2021); s*ee also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F. 3d 161, 168 (2d Cir. 2013) ("To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."); *Rubin v. City of N.Y.*, 2007 U.S. Dist. LEXIS 23003, at *11 (S.D.N.Y. Mar. 29, 2007) (marketing "N.Y.P.D." merchandise to indeterminate number of additional New York residents over internet, as the largest customer base for "N.Y.P.D." merchandise, established that

defendant received benefits of transacting business here in New York).

Alternatively, Defendants are subject to CPLR § 302(a)(3), which provides for jurisdiction over a non-domiciliary who

> commits a tortious act without the state causing injury to person or property within the state, … if he
>
> (i)  regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii)  expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CPLR § 302(a)(3). Defendants should have reasonably expected their cyber-piracy of Israeli and Hebrew-translated content to have consequences in New York, because New York has the highest number of Hebrew speakers in the United States and among the highest number of Israeli-Americans in the United States. (Schwegman, ¶¶3-5, Ex. A). Therefore, it is reasonably foreseeable that Defendants' copyright infringement would have consequences in the State of New York, and Defendants derive their revenue from interstate commerce. *See Starmedia Network, Inc. v. Star Media, Inc*., No. 00 CIV. 4647, 2001 U.S. Dist. LEXIS 4870, *7-8 (S.D.N.Y. Apr. 23, 2001) (holding that defendant "should have reasonably expected that its infringement of plaintiff's trademark would have consequences in New York," given that "defendant used its website to attract and service business across the nation, including in New York, and has received substantial revenue from those interstate sales.").

In August 2021, Plaintiffs United King, Keshet and Reshet provided their content to a new service, Stream Inc., IL d/b/a Screen IL ("Screen IL"), which provides legitimate, authorized access to their content in the United States.  However, the potential subscribers to Screen IL are continuing to use the infringing Website as their source of Israeli and Hebrew content and

declining to subscribe to the legitimate source of such content.  (Matalon, ¶¶ 8-11; Kaufman Ex. 1, ¶¶ 36).  Thus, Plaintiffs are losing business in the form of subscribers in New York to the authorized source of their movies, series, sports and news.  Such loss of business within New York as the result of defendant's activities provides support for personal jurisdiction under CPLR 302(a)(3). *See Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 29806, at *43 (S.D.N.Y. Mar. 2, 2017), citing *Park W. Galleries, Inc. v. Franks*, 2012 U.S. Dist. LEXIS 86629, 2012 WL 2367040, at *7 (S.D.N.Y. June 20, 2012) ("Because Plaintiff alleges an injury to its business in the form of lost New York customers and sales, it is free to invoke the jurisdiction of the Court, which extends in personam to Defendants.").  Accordingly, the Court also has personal jurisdiction over Defendants under CPLR § 302(a)(3).

Exercising personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, because they intentionally direct their business activities towards New York.  (Kaufman Ex. 1, ¶¶ 13-14; Schwegman, ¶¶3-5 and Ex. A).  Thus, they avail themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Spin Master*, 2021 U.S. Dist. LEXIS 222374, at *12, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174 (1985) and *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228 (1958)).

To the extent Defendants are not located in New York, personal jurisdiction also exists under F.R.C.P. Rule 4(k)(2), which  allows courts to exercise personal jurisdiction over a defendant on condition: "(1) that plaintiff's cause of action arise[s] under the federal law; (2) that the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one State; and (3) that the defendant's total contacts with the United States as a whole are sufficient

to confer the court with personal jurisdiction without offending due process." *In re Platinum and Palladium Antitrust Litig.*, 1:14-cv-9391-GHW, 2017 U.S. Dist. LEXIS 46624, 2017 WL 1169626, at *41 (S.D.N.Y. March 28, 2017), citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008).

Therefore, asserting personal jurisdiction in this case does not offend traditional notions of fair play and substantial justice, because Defendants have transmitted, streamed, distributed, publicly performed, linked to, hosted, promoted, advertised, and displayed, through the Website, Plaintiffs' movies, television series, live coverage of sports events and news nationwide, including in New York, and infringed Plaintiffs' copyrights. (Kaufman Ex. 1, ¶¶1, 20, 65).

## II.   PLAINTIFFS ARE ENTITLED TO CONDUCT EXPEDITED DISCOVERY

The Court has authority to grant expedited discovery in order to identify and hold responsible the Defendants.  Plaintiffs seek discovery to obtain information from the vendors providing services to the Website in order to help Plaintiffs identify and locate Defendants. (Kaufman ¶¶ 9-13; Presenti ¶¶ 6-10).

Courts in this district apply a "flexible standard of reasonableness and good cause" to determine whether to grant a motion for expedited discovery prior to a Rule 26(f) conference. Courts also look to the following additional factors in determining whether to allow expedited discovery: (1) specificity of the discovery request, (2) a central need for the subpoenaed information to advance the claim, and (3) the party's expectation of privacy. *Cengage Learning v. Xuhong Wang*, 2017 U.S. Dist. LEXIS 233195, at *1-2 (S.D.N.Y. Sep. 14, 2017), *citing Sony Music Entm't Inc, v. Does 1-40,* 326 F. Supp. 2d 556, 565-66 (S.D.N.Y. 2004) (identification of defendants was sufficiently specific; information was "central" to serve process; any right to

12

remain anonymous must give way to right to use judicial process).

Plaintiffs meet the requirements for good cause where they allege (a) that they are copyright owners of works, that they have the exclusive rights *inter alia* to distribute those works, and that Defendants have infringed those works; (b) that plaintiffs cannot obtain the true names and whereabouts, locate and serve defendants, and seek information that is narrow in scope; and (c) the need for the subpoenaed information outweighs Defendants' expectations of privacy, because anonymity is used to mask and facilitate copyright infringement. *Cengage Learning* 2017 U.S. Dist. LEXIS 233195, at *2-3, citing *Arista Records v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010) (First Amendment is not a license to infringe copyright)

Expedited discovery "is routinely granted in actions involving infringement and unfair competition." *Benham Jewelry Corp. v. Aron Basha Corp*., No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y. Oct. 14, 1997) (citing cases); *Arista Records v. Doe*, 604 F.3d at 117-24 (affirming denial of motion to quash subpoena served on ISP to disclose identities of Internet users allegedly committing copyright infringement).

Plaintiffs' limited requests satisfy the flexible standard of reasonableness and good cause. Without the ability to discover the true names and locations of Defendants, Plaintiffs are unable to name and serve the proper Defendants in this case and will ultimately be unable to litigate its claims against these defendants. Accordingly, Plaintiffs has a substantial need for the discovery. Also, because Defendants' illegal activities occur predominantly behind closed doors, it may be difficult for Plaintiffs to create a more complete record for the injunctive relief requested in the complaint absent such discovery. *See Twentieth Century Fox Film Corp. v. Mow Trading* Corp., 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery in

infringement action because it "may very well lead to evidence of continuing infringement by this defendant or others; it may also lead to the discovery of future plans to infringe or the discovery of additional infringing merchandise"); *Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2018 U.S. Dist. LEXIS 233452, at *4 (E.D.N.Y. Apr. 23, 2018) (granting expedited discovery to identify any other persons involved in the alleged counterfeiting and to locate the supply of counterfeit goods). The same situation applies here.

Accordingly, Plaintiffs meets all the factors for immediate, limited discovery to identify Defendants and obtain their contact information.

## III. THE CIRCUMSTANCES MERIT AN ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS ON DEFENDANTS BY ELECTRONIC MEANS

This Court may authorize Plaintiffs to use alternative service under the applicable federal and New York rules. Federal Rule of Civil Procedure 4(e)(1) allows for service on an individual in the United States according to "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." To the extent Defendants are found to be located in the United States, New York's service of process rules apply. Alternatively, if Defendants are located outside the United States, Federal Rule of Civil Procedure 4(f) applies. Under either New York or federal rules, service by electronic means is available and within this Court's discretion.

Defendants operate and conduct unauthorized streaming services that are dedicated to infringing Plaintiffs' copyrights. (Matalon, ¶¶ 3-4; Kaufman Ex. 1, ¶¶ 1,12, 20, 30, 33, 50, 53, 54). Plaintiffs do not currently know where Defendants reside because Defendants have gone to great lengths to conceal their locations. (Presenti, ¶¶6-10 and Ex. C thereto).   Although

Defendants have hidden behind anonymous domains, identities and locations, the Website has a portal to facilitate payment and technical support for their pirating activities. Defendants clearly use their "Contact Us" portal to facilitate their infringing businesses. The Website also has an email address for customer service. Under these circumstances, service of process through the Website portal and by email is appropriate.

### A. CPLR § 308 Authorizes Alternate Service on Individuals in the United States.

CPLR § 308(5) allows for service "in such a manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." Paragraphs one, two, and four of §308 all require that a plaintiff know the precise whereabouts or home or business address of a defendant. However, for the reasons already discussed above, Plaintiffs do not have this information for Defendants. Thus, service via §308(1), (2), or (4) is impracticable in this case, and the Court may order service of process via email as an alternate method. In fact, courts in New York have authorized service of process by email where service by traditional methods was impracticable. *See, e.g., Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-04 (4th Dep't 2013) (noting that both New York courts and federal courts have authorized email service of process as an appropriate method and affirming the trial court's order allowing service upon defendant via email). *See also Alfred E. Mann Living Tr. v. ETIRC Aviation S.A.R.L.*, 78 A.D.3d 137, 142, 910 N.Y.S.2d 418, 423 (1st Dept. 2010) a (funding agreement specifically provides e-mail address as means to provide defendant with any notice, request, demand, or communication. "Consequently, service of process at that address is, by definition, 'reasonably calculated' to apprise [defendant] of the action and thus comports with the requirements of due process.")

Here, Defendants expressly state in their infringing Website that the means of contacting

the Website's operators is through the Website's "Contact Us" portal and through an email address last made public in 2012, but obscured by privacy proxy services since then. (Kaufman, ¶¶ 15-17 and Ex. 3; Presenti, ¶8, Ex. D at 4). Thus, because Defendants' physical addresses are unknown and purposely obscured, service of process through such emails and subscription portals is reasonably calculated to reach Defendants by the same means.

Alternative service by email has been permitted where service by traditional methods has been held to be "clearly impracticable, as Plaintiffs have been unable to locate the whereabouts of any of Defendants thanks to Defendants' efforts to conceal their identities and locations." *Cengage Learning v. Xuhong Wang*, 17 Civ. 4914 (JFK), 2017 U.S. Dist. LEXIS 233195, at *4 (S.D.N.Y. Sep. 14, 2017). Service of process by email is reasonably calculated to provide notice to defendants where defendants conduct their online business entirely via email. *Id.*, citing *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *3 (S.D.N.Y. Mar. 13, 2007) (service by email was appropriate where defendants "conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email"; purported physical addresses "in distant foreign locales" were not valid for purpose of service of process.)

Alternative service under Rule 4(f)(3) need not be the "last resort nor extraordinary relief. Alternative service is merely one means among several which enables service of process on an international defendant." *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013). *See Sirius XM Radio Inc. v. Aura Multimedia Corp.*, No. 1:21-cv-06963 (GHW) (SDA), 2021 U.S. Dist. LEXIS 232358, at *2 (S.D.N.Y. Dec. 4, 2021) (service by email was sufficient; no "bounceback" was received in response to email transmission). *See also ADI Glob. Distribution v. Green*, No. 20-CV-3869

(DRH)(JMW), 2021 U.S. Dist. LEXIS 231977, at *10 n.7 (E.D.N.Y. Dec. 3, 2021) ("The current global pandemic provides further reason to find that service via email satisfies due process, as it is the most efficient method to accomplish service."); *Marvici v. Roche Facilities Maint. LLC*, 2021 U.S. Dist. LEXIS 193094, at *10-11 (S.D.N.Y. Oct. 6, 2021) (service by text message approved intended as one component of a suite of service methods, backstopping the plan also to serve by certified mail).

### B. Rule 4(f)(3) of the Federal Rule of Civil Procedure Authorizes Alternate Service on Individuals in a Foreign Country.

Rule 4(f)(3) of the Federal Rule of Civil Procedure allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); *see also RSM Prod. Corp. v. Friedman*, No. 06 Civ. 11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24, 2007) ("The decision whether to allow alternative methods of serving process . . . is committed to the sound discretion of the district court.") (citations omitted).

### 1. Service of Process by Email on Defendants Is Not Prohibited by International Agreement

Alternative service of process by electronic means is proper where, as here, the proposed method of service is not prohibited by international agreement and due to the nature of Defendants' business, makes the most sense because it is the most likely method of service to provide prompt, actual notice of the claims.

Defendants' true addresses are unknown. The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") does not apply in cases where the address of the person to be served is not known to the party serving process. Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361; *see also In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 U.S. Dist. LEXIS 142802, at *6 (S.D.N.Y. Aug. 10, 2020) ("the addresses of the Unserved Defendants are essentially unknown, rendering the Hague Convention service procedures inapposite"; granting motion for service by email and social media); *Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist. LEXIS 26536, at *5 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention … because [defendant's] address is not known to [plaintiff].").

Absent an international agreement, the Court may allow alternative methods of services under Fed. R. Civ. Pro Rule 4(f)(3), so long as the method is directed by the Court and comports with constitutional notions of due process. "Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *FTC v. PCCare247*, 2013 U.S. Dist. LEXIS 31969, at *11-2 (service by email and additionally through Facebook messenger); *Prediction Co*, 2010 U.S. Dist. LEXIS 26536, at *3.

In addition, the Hague Convention does not prohibit service by email, even where the country in which defendants are located has objected to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail. *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. Nov. 27, 2015) (email communications more reliable than

long-distance postal communications); *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) (allowing service on defendants in India by email).

### 2. Service of Process by Email Is Reasonably Calculated to Provide Notice to Defendants

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *8 (internal quotations and citation omitted). Thus, courts have fashioned a variety of different methods of service, including service by email. *See, e.g., PCCare247,* 2013 U.S. Dist. LEXIS 31969, at *18-20 (allowing service by email and Facebook); *Prediction Co.*, 2010 U.S. Dist. LEXIS 26536, at *1-5 (allowing service by email address previously used by defendant to communicate with plaintiff).

Service by email on a defendant engaged in an online counterfeiting ring is appropriate and constitutionally acceptable in a case such as this where without a defendant's physical address, email is the most effective means of providing the defendant with notice of the action. *See Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *9 (finding that service by email was appropriate where, as here, defendants "conduct business extensively, if not exclusively, through their Internet Website and correspond regularly with customers via email"); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 U.S. Dist. LEXIS 169603, at *12 (S.D.N.Y. Sep. 30, 2018) (email service of English language documents, authorized by court's order, complied with both Rule 4(f)(3) and due process).

"Case law is replete with instances where service by electronic means has been authorized under Rule 4(f)(3) because the defendant's location could not be determined and there was evidence that the defendant had been using the electronic mail accounts." *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc*., 17 Civ. 5553 (LGS) (GWG),

2020 U.S. Dist. LEXIS 139730, at *21 (S.D.N.Y. Aug. 5, 2020) (citing cases); *Microsoft Corp. v. Doe*, No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122, at *8 (E.D.N.Y. Nov. 13, 2012) (allowing service of process by email where defendants remained anonymous and concealed their locations but responded to emails).

Here, service through the Website's "Contact Us" portal and email service (Kaufman ¶ 15 and Ex. 3) has the greatest likelihood of reaching streaming services like Defendants who are adept at hiding their identity and location.  Serving Defendants through their "Contact Us" portal and by email will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiffs' claims.

Service through email is particularly appropriate where defendants engage in online business and regularly communicate with customers through functional email addresses. *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 (S.D.N.Y. 2018) (service to defendants' email addresses associated with their eBay and PayPal accounts "comports with constitutional notions of due process").  Because Defendants provide subscriptions through the infringing Website, they presumably rely at least partially on contact through their "Contact Us" portal and e-mail address to conduct overseas business, and it is reasonable to expect them to learn of the suit against them through these email addresses. *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015).

### **CONCLUSION**

WHEREFORE, Plaintiffs United King Film Distribution Ltd, D.B.S. Satellite Services (1998) Ltd, HOT Communication Systems Ltd, Charlton Ltd, Reshet Media Ltd, and Keshet Broadcasting Ltd respectfully request the Court issue an Order:

A.  Granting expedited discovery so that Plaintiff may issue a Rule 45 subpoena to the

vendors providing services to the website located at www.Sdarot.tv (the "Website"), including Name.com, Cloudflare, Visa, Amazon.com, Joel Boyle, and Roku (and any other vendor to the Website who become known to Plaintiffs), to obtain the names, addresses, telephone numbers and email addresses of the operator and/or owners of the Website (the "Defendants");

B.  Granting Plaintiffs leave to serve copies of the Court's Order, the Complaint, Summons, and Plaintiff's ex parte application (together with all supporting declarations and other documents) on the Defendants by providing a link to DropBox to a folder containing such court documents, and sending such link to Defendants through the Website's "Contact Us" customer support portal and through the email address sdarot.tv@gmail.com (and also attaching to the email copies of the Order, the Complaint and  Summons) and to any other email address that become known to Plaintiffs by means of the above-described expedited discovery or associated with Defendants' business; and

C.  For such additional relief as the Court deems just and appropriate.

Dated: New York, New York
       January 7, 2021                          KAUFMAN & KAHN, LLP

                                                By: /s/ Mark S.Kaufman
                                                Mark S. Kaufman
                                                10 Grand Central
                                                155 East 44th Street, 19th Floor
                                                New York, New York  10017
                                                Tel.:  (212) 293-5556
                                                Email:  Kaufman@kaufmankahn.com
                                                *Attorneys for Plaintiffs*